UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| FRANK NIEMIEC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:05cv219 |
| ) | |
| NCO FINANCIAL SYSTEMS, INC., and ) | |
| NCO PORTFOLIO MANAGEMENT, INC., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter is before the court on a motion to dismiss filed by the defendants, NCO Financial Systems, Inc. ("NCO Financial") and NCO Portfolio Management, Inc. ("NCO Portfolio"), on January 27, 2006. The plaintiff, Frank Niemiec ("Niemiec"), filed a response to the motion on February 20, 2006, to which the defendants replied on March 2, 2006.

On March 6, 2006, Niemiec filed a motion to strike portion of defendants' reply brief. The defendants responded to the motion to strike on March 7, 2006, to which Niemiec replied on March 15, 2006.[1] On May 3, 2006, this court entered an order requesting that the defendants submit certain documents. On May 10, 2006, the defendants filed a reply to the court's order and submitted the requested documents as exhibits thereto.[2]

---

[1] Niemiec, in his motion to strike portion of defendants' reply brief, asks the court to strike the defendants' quotation of a case on page 4 of their reply brief. Niemiec asserts that the quotation materially misrepresents the Seventh Circuit's meaning. The case at issue is <u>Olvera v. Blitt & Gaines, P.C.</u>, 431 F.3d 285 (7th Cir. 2005). Niemiec complains that the defendants' quotation of the case replaced "Illinois Interest Act" with "[Indiana UCCC]". The court has taken note of the quoted language, but finds that a party's dislike of a quotation method is an insufficient reason to strike a portion of a brief. Thus, the motion to strike will be denied.

[2] On March 6, 2006, the defendants requested a hearing on their motion to dismiss. After reviewing the briefs in this matter, the court determines that a hearing will not be

For the following reasons, the motion to dismiss will be granted.

## Discussion

On June 29, 2005, Niemiec filed his class action complaint on behalf of a putative class of consumers residing in Indiana, Colorado, Iowa, Kansas, Oklahoma, and Wyoming. Niemiec contends that NCO Portfolio and NCO Financial violated the Uniform Consumer Credit Code ("UCCC") in these six states by attempting to collect interest in excess of that permitted by the applicable state UCCC provisions. Niemiec asserts two counts premised upon the alleged wrongdoing. First, Niemiec asserts class claims under the various state UCCC provisions for declaratory judgment, injunction, damages, and attorneys' fees. Second, Niemiec claims that NCO Portfolio and NCO Financial violated the Fair Debt Collection Practices Act ("FDCPA") by violating the UCCC in the six states. Plaintiff seeks statutory and actual damages, along with attorneys' fees, on behalf of the putative class for the alleged FDCPA violations.

On January 5, 2006, Niemiec filed a motion to certify the putative class. On January 13, 2006, defendants filed a motion to stay class discovery and ruling on class certification pending a ruling on this dispositive motion. Niemiec filed a motion to compel defendants to produce all discovery related to class issues. Defendants opposed Niemiec's class certification request and objected to Niemiec's requested discovery. On February 1, 2006, Magistrate Judge Cosbey entered an order granting the defendants' motion to stay and staying the motion to compel pending the resolution of the current motion to dismiss.

Niemiec is an Indiana resident. NCO Portfolio is a debt purchaser. NCO Financial is a debt collector. Niemiec entered into a loan agreement with Beneficial Finance (Beneficial).

---

necessary.

2

It is undisputed that Beneficial was a "supervised financial organization," per Indiana Code § 24-4.5-1-301(20).[3] It is also undisputed that, pursuant to the terms of the loan agreement, upon default, Beneficial was permitted to charge 26 percent interest. For purposes of their motion, neither NCO Portfolio nor NCO Financial disputes that the loan qualifies as a "consumer loan," per Indiana Code § 24-4.5-3-104, as alleged by plaintiff.[4] Further, defendants agree, for purposes of their motion, that the loan qualifies as a "supervised loan," per Indiana Code § 24-4.5-3-501(1), due to the 26 percent interest rate.[5]

---

[3] A "supervised financial organization" is a person, other than an insurance company or other organization primarily engaged in an insurance business:

> (a) organized, chartered, or holding an authorization certificate under the laws of a state or of the United States which authorizes the person to make loans and to receive deposits, including a savings, share, certificate, or deposit account; and
> (b) subject to supervision by an official or agency of a state or of the United States.

Ind. Code § 24-4.5-1-301(20).

[4] Except with respect to a loan primarily secured by an interest in land, a "consumer loan" is a loan made by a person regularly engaged in the business of making loans in which:

> (a) the debtor is a person other than an organization;
> (b) the debt is primarily for a personal, family, or household purpose;
> (c) either the debt is payable in installments or a loan finance charge is made; and
> (d) either:
> (I) the principal does not exceed fifty thousand dollars ($50,000); or
> (ii) the debt is secured by an interest in land or by personal property used or expected to be used as the principal dwelling of the debtor.

Ind. Code § 24-4.5-3-104.

[5] A "supervised loan" is "a consumer loan in which the rate of the loan finance charge exceeds twentyone percent (21%) per year as determined according to the provisions on loan finance charge for consumer loans (IC 24-4.5-3-201)." Ind. Code § 24-4.5-3-501(1).

After Niemiec's loan default, the debt was purchased by and assigned to NCO Portfolio. NCO Financial then attempted to collect the debt on behalf of its client, NCO Portfolio. On or about April 12, 2005, NCO Financial sent plaintiff a collection letter, seeking to collect the principal and interest of 26 percent. Niemiec contends that NCO Portfolio and NCO Financial violated the Indiana UCCC and FDCPA by attempting to collect 26 percent interest without being licensed under the Indiana UCCC as a "supervised lender".

In support of their motion to dismiss, the defendants first argue that, as the assignee, NCO Portfolio was permitted to charge 26 percent interest, even though it could not legally contract for a loan finance charge exceeding 21 percent interest. As noted above, Indiana Code § 24-4.5-3-201(1) provides that, except for "supervised loans," "a lender [of a consumer loan] may [not] *contract for a loan finance charge* . . . exceeding twenty-one percent (21%) per year on the unpaid balances of the principal." (emphasis added). As the italicized words indicate, § 24-4.5-3-201(1) only applies to persons who "contract for a loan finance charge[.]" Beneficial, *not* the defendants herein, contracted for the 26 percent interest rate charged to plaintiff. Thus the defendants argue that neither NCO Portfolio, nor NCO Financial, violated § 24-4.5-3-201(1).

In response, Niemiec correctly notes that the term "lender" includes "an assignee of the lender's right," per Indiana Code § 24-4.5-3-107(1), and thus Niemiec argues that assignees must be licensed as a "supervised lender". But, according to the defendants, Niemiec misunderstands why the term "lender" includes assignees. The defendants argue that the apparent reason for defining "lender" to include assignees is to ensure that assignees that "contract for" interest rates exceeding 21 percent are regulated by § 24-4.5-3-201(1). For example, if, subsequent to assignment, an assignee negotiated a higher interest rate under a payment plan with the debtor,

4

the assignee would be limited by the restrictions set forth in § 24-4.5-3-201(1) because the assignee would be "contracting for" an interest rate. As defendants point out, such is not the case here. Even though NCO Portfolio may be considered a "lender," per § 24-4.5-3-107(1), by statutory definition, NCO Portfolio could not have violated § 24-4.5-3-201(1), as it did not contract with Niemiec. This court agrees with the defendants that NCO Portfolio did not violate the 21 percent restriction in § 24-4.5-3-201(1) because it did not "contract for" an interest rate exceeding 21 percent.

Niemiec also argues that in order for NCO Portfolio to charge 26 percent interest, NCO Portfolio must first be licensed as a "supervised financial organization" or "supervised lender" per Indiana Code § 24-4.5-3-501, et seq.[6] The defendants, however, contend that Niemiec's argument is based upon a flawed reading of the Indiana UCCC provisions.

Indiana Code § 24-4.5-1-103 provides that, "[u]nless displaced by the particular provisions of this article, the Uniform Commercial Code (IC 26-1) and the principles of law and equity . . . shall supplement [the Indiana UCCC] provisions." The defendants point out that there are no provisions in the Indiana UCCC that displace the law of assignment or rights of assignees. To the contrary, the Indiana UCCC contemplates that original lenders will assign their consumer loans. For example, Indiana Code § 24-4.5-3-406 requires that assignees provide notice of the

---

[6] Sec. 501. Definitions:
(1) "Supervised loan" means a consumer loan in which the rate of the loan finance charge exceeds twenty-one percent (21%) per year as determined according to the provisions on loan finance charge for consumer loans (IC 24-4.5-3-201).

(2) "Supervised lender" means a person authorized to make or **take assignments** of supervised loans. [Emphasis added.]

assignment to debtors.[7]

Niemiec admits that Beneficial was a "supervised financial organization." *See* Docket No. 1 at ¶ 34. As such, Beneficial was permitted to contract for the 26 percent interest rate. *See* Ind. Code § 24-4.5-3-502 (authority to make consumer loans); Ind. Code § 24-4.5-3-508 (maximum interest rate for supervised loans). As the assignee of plaintiff's loan, NCO Portfolio was permitted, as a matter of law, to stand in Beneficial's shoes and collect the 26 percent contract interest rate pursuant to the legal principle of assignment. *See Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993) ("We begin with the well-settled principle of contract law that a valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor. Unless a contrary intent is shown, the assignee stands in the shoes of the assignor.") (citations omitted); *Porter v. Bankers Trust Co. of California, N.A.*, 773 N.E.2d 901, 905 (Ind. Ct. App. 2002) ("And it is well established that an assignee of a contract takes the assignor's rights and becomes subject to the same obligations. Stated differently, the assignee stands in the shoes of the assignor.") (citations omitted).

The defendants assert that whether NCO Portfolio was required to be licensed as an assignee under the Indiana UCCC licensing provisions is a separate legal issue. The defendants further assert that the licensing requirement for assignees does not create any rights, but that an assignee's right to collect interest flows from the assignment, not from an Indiana UCCC license. The defendants also maintain that the Indiana UCCC licensing provisions do not even apply to

---

[7] *See* Ind. Code § 24-4.5-3-406 ("The debtor is authorized to pay the original lender until he receives notification of assignment of rights to payment pursuant to a consumer loan and that payment is to be made to the assignee.").

NCO Portfolio or NCO Financial.

The Indiana UCCC (IC 24-4.5-3-502) imposes the following licensing requirement on assignees of consumer loans:

> Unless a person is a supervised financial organization or has first obtained a license from the department, the person shall not regularly engage in this state in the business of:
> . . .
> (b) taking assignments of *and* undertaking direct collection of payments from or enforcement of rights against debtors arising from consumer loans.
>
> > However, an assignee may collect and enforce for three (3) months without a license if the assignee promptly applies for a license and the assignee's application has not been denied.

Ind. Code § 24-4.5-3-502 (emphasis added).

Niemiec alleges that NCO Portfolio and NCO Financial violated this licensing requirement. The defendants strongly assert the contrary. The defendants point out that, as admitted by Niemiec, NCO Portfolio took assignment of the loan. NCO Financial then undertook "direct collection of payments from or enforcement of rights against" Niemiec. *See* Docket No. 1 at ¶ 23. The defendants argue that since neither entity completed both acts, the Indiana licensing requirement for assignees does *not* apply to either NCO Portfolio or NCO Financial and the Court should dismiss Niemiec's complaint for failure to state an Indiana UCCC claim.

Niemiec, however, claims that the defendants' argument that they are immune to the Indiana Uniform Consumer Credit Code ("IUCCC") because they are assignees of a supervised lender is directly contrary to the statute. According to Niemiec, supervised loans are defined and regulated directly in IC § 24-4.5-3-501 et seq. and IC 24-4.5-3-501(1)-(2), which he claims makes it clear that "supervised loans" are loans with interest in excess of 21%, and any entity

that makes or takes assignments of supervised loans must be authorized by the State of Indiana to do so:

> Sec. 501. Definitions:
>
> > (1) "Supervised loan" means a consumer loan in which the rate of the loan finance charge exceeds twenty-one percent (21%) per year as determined according to the provisions on loan finance charge for consumer loans (IC 24-4.5-3-201).
> >
> > (2) "Supervised lender" means a person authorized to make or **take assignments** of supervised loans. [Emphasis added.]

Niemiec argues that Section 501's direct reference to assignees refutes the defendants' argument that they did not need to be licensed to collect interest in excess of 21% because they did not contract for the loan. Niemiec contends that the law clearly contemplates that interest in excess of 21% can only be applied by those with supervised lender licenses, regardless of whether the holder of the loan originated the loan or acquired it by assignment.

Niemiec next asserts that the defendants are also incorrect regarding their rights as assignees. The common law notion that an assignee takes the rights of the assignor does not apply if a statute changes the common-law rule. Neff v. Capital Acquisitions & Mgmt. Co., 352 F.3d 1118, 1121 (7th Cir. 2003)(where regulatory statutes specifically address the circumstances of an assignee's rights and obligations courts do not look to the 'normal rule' that an assignee has the duties and rights of the assigning party.)

Niemiec points out that the original creditor's license to assess interest above 21% is "not assignable or transferable" to an unsupervised or unlicensed lender. IC 24-4.5-3-503(6). As noted, Indiana law specifically regulates purchasers of consumer debts, such as NCO Portfolio. IC 24-4.5-3-107 ("Except as otherwise provided, 'lender' includes an assignee of the lender's

right to payment but use of the term does not in itself impose on an assignee any obligation of the lender with respect to events occurring before the assignment").

Niemiec argues that while a loan itself may be assigned to an unsupervised or unlicensed lender, the rate must be lowered to comply with the 21% interest cap. Niemiec relies on <u>Walters v. PDI Management Servs.</u>, 2004 U.S. Dist. LEXIS 19570, at *8 (S.D. Ind. June. 14, 2004) in support of his position.

In <u>Walters</u>, debt-buyer/assignee PDI was attempting to collect an alleged debt, originally owed to Chase, and was adding more than 21% interest to the balance. Walters claimed that the debt was void because PDI had violated the IUCCC. PDI countersued to collect the alleged debt. The District Court held that although PDI could collect on the loan, it could not collect more than 21% because it was an unsupervised assignee of a consumer debt.

The distinction between <u>Walters</u> and the case at bar is that in <u>Walters</u>, PDI was both the assignee and the debt collector. Thus, <u>Walters</u> does not really address the most important question in this case, <u>i.e.</u>, whether the assignee must also attempt to collect the debt to trigger the licensing requirement.

Niemiec also claims that the official commentary issued by the Commission on Uniform State Laws to the IUCCC:

> Supervised lenders may include supervised financial organizations. Section 1.301(17). Since supervised financial organizations are already subject to supervision by a state or federal official or agency, such organizations are not required to obtain a license under this Act from the Administrator, but their powers may be limited by statutes other than this Act. Section 1.108.
>
> Other persons making supervised loans in this State <u>or</u> taking assignments of supervised loans for collection or enforcement in this State must obtain a license from the Administrator. [paragraph

9

break and emphasis added].

The defendants, however, deny that this commentary has been adopted by the Indiana legislature. The defendants acknowledge that IC 24-4.5-3-502 does contain "official commentary" issued by the Commission on Uniform State Laws (CUSL). According to the defendants, when the Indiana legislature intends that such "official commentary" be utilized, the legislature has expressed that intent within the statute itself. For example, when enacting Indiana's Business Corporation Law, IC 23-1-17-1, et seq, the Indiana legislature expressly adopted the "official comments" of the General Corporation Law Study Commission and Corporate Law Survey Commission in IC 23-1-17-5, which provides "[o]fficial comments [of the General Corporation Law Study Commission and Corporate Law Survey Commission] . . . may be consulted by the courts to determine the underlying reasons, purposes, and policies of this article and may be used as a guide in its construction and application." The defendants argue that it is significant that the Indiana legislature did not include any such statutory provision in the Indiana UCCC related to the CUSL "official commentary", and thus the court should not rely upon the purported "official commentary." See Benham v. State, 637 N.E.2d 133, 137 n.3 (Ind. 1994)(criticizing the dissent's reliance upon commentary in West's Annotated Indiana Code and stating "[w]e find no evidence that this was an 'official commentary' or that it was adopted or even considered by the legislature.").

The defendants acknowledge that IC 24-4.5-3-502 requires certain assignees to be licensed, but continue to argue that the licensing requirement does not apply to them because

individually they did not take assignment <u>and</u> attempt to collect on the loan.[8] The defendants further insist that Niemiec does not allege, nor could he, that either defendant violated IC 24-4.5-3-201 (which defines "lender" to include assignees).

According to the defendants, the purpose of IC 24-4.5-3-201 and IC 24-4.5-3-508 is to prevent overreaching by a lender, not regulate what assignees may collect. Both statutes set ceilings for what a lender may "contract for'. Niemiec correctly admits that "[i]t is clear that defendants . . . did not contract with [him]. Response Brief at 7, fn.3. Thus, the defendants conclude that, considering the undisputable fact that Beneficial, not the defendants, contracted for the 26% interest rate, neither IC 24-4.5-3-201 nor IC 24-4.5-508 applies to the defendants.

This court agrees with the defendants on the UCCC issues. The express wording of § 3-502 dictates that it only applies if an entity both takes assignment of <u>and</u> undertakes direct collection of payment of a supervised loan. Section 3-201 does not apply because the defendants did not contract for the 26 % interest rate, and § 3-508 does not apply for this same reason.

The defendants further contend that even if either of them were found to have violated the IUCCC licensing requirment, Niemiec would not have a remedy against either defendant. The defendants point out that the IUCCC grants debtors specific remedies for violations of the Act, as set forth in IC 24-4.5-5-202, and none of these remedies permit debtors to seek damages,

---

[8] The defendants direct the court to IC 24-4.5-3-508(1), which provides the maximum rate for supervised loans, such as Niemiec's:
> With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.

This statute imposes various maximum rates depending on the amount of the supervised loan.

or any other relief, against assignees for failure to comply with the licensing requirements.

Niemiec, in turn, relies on IC 24-4.5-5-203(3) which explicitly forbids assignees from collecting illegal interest:

> A debtor is not obligated to pay a charge in excess of that allowed by this Article, and if the debtor has paid an excess charge the debtor has a right to a refund. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge <u>or from an assignee</u> of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

Niemiec points out that this is the exact relief the court provided to the plaintiff in <u>Walters</u>. Defendants, however, argue that <u>Walters</u> is an incorrect application of the law and, as a district court opinion, is not binding on this court. One interpretation of I.C. 24-4.5-5-203(3) is that it only applies when the original lender charged a higher interest rate than permitted by statute, and then assigned the debt to a different entity. In the present case, the interest rate was undisputedly legal when initially contracted for. Thus, notwithstanding <u>Walters</u>, the court does not read any remedy for Niemiec in § 5-203(3).

With respect to Niemiec's FDCPA claims, the defendants first argue that these claims are predicated upon the alleged violation of the Indiana UCCC, and thus if no violation of the Indiana UCCC occurred, the FDCPA claims also fail.

The defendants next argue that even if the Court were to find that NCO Portfolio or NCO Financial violated the Indiana UCCC for failure to be properly licensed, "debt collection practices in violation of state law are [not] per se violations of the FDCPA." *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996); *cf. Wehrheim v. Secrest, P.C.*, 2002 WL

31242783, *4 (S.D. Ind. 2002); *Clark v. Pollard*, 2000 WL 1902183, *3 (S.D. Ind. 2000). Specifically, a violation of state licensing law does *not* constitute an FDCPA violation. *See Wade*, 87 F.3d at 1101; *Ferguson v. Credit Management Control, Inc.*, 140 F.Supp.2d 1293, 1302 (M.D. Fla. 2001) (sending of nonthreatening collection letter without first obtaining required state license did not violate FDCPA). In the words of the Ninth Circuit, a violation of state licensing law is "innocuous." *Wade*, 87 F.3d at 1100.

The defendants contend that, like the violation in *Wade*, the alleged violation here is innocuous, and Niemiec has not suffered any damages due to the alleged technical violation of the Indiana UCCC licensing requirement. "The violation of a technical . . . ordinance [or rule] not specific to debt collection activities resulting in no identifiable harm to [a debtor] is insufficient to state a claim under the FDCPA." *Richardson v. Allianceone Receivables Management, Inc.*, 2004 WL 867732, *3 (S.D.N.Y. 2004).

The defendants further argue that if the Court were to find that NCO Portfolio or NCO Financial violated the FDCPA by violating the Indiana UCCC licensing requirement, the Court would essentially be providing a federal remedy for an alleged state violation. In *Olvera*, Judge Posner questioned the propriety of such a result: "This is a stretch, and not merely semantically; it makes the federal statute a vehicle for enforcing a state law, and why would Congress want to do that?" *Olvera*, 431 F.3d at 287. The defendants maintain that if the Court were to find that NCO Portfolio or NCO Financial violated the FDCPA by violating the Indiana UCCC licensing requirement, the Court would create a paradox, *i.e.*, the failure to be licensed as an assignee under the Illinois Interest Act is *not* an FDCPA violation per *Olvera*, but the failure to be licensed as an assignee under the Indiana UCCC is an FDCPA violation. Such a result, according

13

to the defendants, would be incongruent and illogical.

In response, Niemiec claims that the defendants wrongly argue that attempting to collect usurious interest does not constitute a violation of the FDCPA. The FDCPA 15 U.S.C. § 1692f(1) states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

The Federal Trade Commission has interpreted this language to mean that:

> A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (b) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if either (a) state law expressly prohibits collection of the amount, or (b) the contract does not provide for collection of the amount and state law is silent. [Federal Trade Commission Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097 at 50,108 (Dec. 13, 1988).]

15 U.S.C. § 1692e(2)(A) states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ****
> (2) The false representation of—
>
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

See also 1692e(5) and 1692e(10).

Thus, Niemiec concludes that if a debt collector collects or attempts to collect interest that is prohibited by law, such as is alleged here, it has violated the FDCPA. "Whether the collection of a debt violates §1692f(1) depends solely on two factors: (1) whether the debt agreement explicitly authorizes the charge; or (2) whether the charge is permitted by law." Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 996 (7th Cir. 2003). "Under this provision, it is unconscionable for a debt collector to collect *any amount in excess of the principal amount of a loan*, including collection charges, unless these charges are authorized expressly by the terms of the agreement creating or evidencing the debt or unless the charges are authorized explicitly by applicable state law." Patzka v. Viterbo College, 917 F.Supp. 654, 658 (W.D. Wisc. 1996) (emphasis added). See also, Picht v. Jon R. Hawks, Ltd., 236 446, 448 (8th Cir. 2001) ("The FDCPA probibits, inter alia, the use of debt collection practices that violate state law."); West v. Costen, 558 F.Supp. 564 (W.D.Va. 1983); Tuttle v. Equifax Check, 190 F.3d 9, 13 (2nd Cir. 1999); Pollice v. National Tax Funding L.P., 225 F.3d 379, 408 (3rd Cir.2000).

Numerous cases hold that a debt collector that demands charges forbidden by the IUCCC violates the FDCPA. Conner v. Howe, 344 F. Supp. 2d 1164 (S.D.Ind. 2004); Walters v. PDI Mgmt. Servs., 1:02-cv-1100-JDT-TAB, 2004 U.S. Dist. LEXIS 19570 (S.D.Ind. June 14, 2004), earlier opinion, 2004 U.S. Dist. LEXIS 13972 (S.D. Ind., Apr. 6, 2004); Nance v. Ulferts, 282 F. Supp. 2d 912 (N.D.Ind. 2003); Bernstein v. Howe, 2003 U.S. Dist. LEXIS 5284, 2003 WL 1702254 (S.D. Ind. March 31, 2003); Bullock v. Credit Bureau of Greater Indianapolis, 272 F. Supp. 2d 780 (S.D.Ind. 2003).

Niemiec points out that the plaintiff's entire cause of action in Wade (relied upon by the

15

defendants) was based solely on the fact that an unlicensed defendant collector attempted to collect debts in Idaho. Id. at 1100. The Ninth Circuit held that this was not an FDCPA violation because (1) there was no threat of action that could not legally be taken, (2) there was no false representation regarding the debt, and (3) defendant did not deprive plaintiff of any rights as a consumer. Id. In other words, the Ninth Circuit analyzed the defendant's conduct under the language of the FDCPA.

Niemiec states that he does not contend that a violation of the IUCCC is a per se violation of the FDCPA in this case. Rather Niemiec claims that under the Wade analysis, NCO Portfolio and NCO Financial's actions that violated Indiana law also violate the FDCPA. According to Niemiec, defendants' attempt to collect excess interest that they could not legally collect was a violation of § 1692f(1). Niemiec alleges that the "false representation" of the amount of the debt by adding interest at 26% when they could only legally add at 21% is deceptive under 15 U.S.C. §§ 1692e, 1692e(10). And defendants misrepresented the character and amount of the debt by attempting to collect 26% interest when they were only entitled to collect 21% interest. 15 U.S.C. § 1692e(2)(a).

This court finds that even if a viable cause of action under the UCCC existed in this case, there is still no viable cause of action under the FDCPA. If the defendants were found to not be properly licensed under the UCCC, Niemiec would still need to properly allege that the defendants had attempted to collect usurious interest. Niemiec has agreed that Beneficial, a licensed "supervised lender", legally contracted with him for the 26% interest rate. Thus, there is no factual basis for an allegation that the defendants violated the FDCPA. Accordingly the complaint will be dismissed in its entirety.

<u>Conclusion</u>

Based on the foregoing, the defendants' motion to dismiss is hereby GRANTED.

Further, Niemiec's motion to strike is hereby DENIED.

Entered: June 27, 2006.

<u>s/ William C. Lee</u>
William C. Lee, Judge
United States District Court